

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

June 24, 1954

Hon. John H. Winters                    Opinion No. S-129
Executive Director
State Department of                     Re:  Effect of H.B. 89, Ch. 58,
   Public Welfare                            Acts 53rd Leg., 1st C.S.,
Austin, Texas                                on Federal old-age and sur-
                                             vivor's insurance coverage
                                             for employees of political
Dear Mr. Winters:                            subdivisions of the State.

        You have requested an opinion relative to the effect of House
Bill No. 89, Chapter 58, Acts of the 53rd Legislature, First Called Ses-
sion, 1954, on the authority of the State Department of Public Welfare
to enter into agreements with governing bodies of political subdivisions
of the State for Federal old-age and survivor's insurance coverage.

        Federal old-age and survivor's insurance coverage for certain
county and municipal employees was originally authorized by Chapter 500,
Acts of the 52nd Legislature, 1951 (codified as Article 695g in Vernon's
Civil Statutes).  Chapter 197, Acts of the 53rd Legislature, Regular Ses-
sion, 1953, amended all appropriate sections of the original act so as to
extend the coverage to "other political subdivisions" in addition to coun-
ties and municipalities.  Section 4 of Article 695g, as amended in 1953,
read:

        "The State Agency [State Department of Public Welfare]
    is authorized to enter into agreements with the governing
    bodies of counties and with the governing bodies of munici-
    palities and with the governing bodies of other political
    subdivisions of the State which are eligible for Social
    Security coverage under Federal law when the governing
    body of any such counties or municipalities or other po-
    litical subdivisions desire to obtain coverage under the
    old-age and survivor's insurance program for their employ-
    ees, these agreements to embrace such provisions relating
    to coverage benefits, contributions, effective date, mod-
    ification and termination of the agreement, administration,
    and any other appropriate matters consistent with the Con-
    stitution and laws of Texas as the State Agency and the
    governing body of the county, municipality or other polit-
    ical subdivision shall agree."  (Emphasis indicates changes
    made by the 1953 amendment.)

This statute was again amended by Chapter 58, Acts of the 53rd Legislature, First Called Session, 1954. The caption of Chapter 58 recited that it was amending the existing statute

". . . so as to provide for the additional coverage of certain persons who are fully paid their salaries from Federal Funds of the United States, but who are classified by the United States Government as State Employees; providing that all provisions of the laws governing participation in social security benefits shall apply to these persons, except that no matching contribution will ever be paid by the State of Texas; authorizing the Adjutant General of Texas and the State Department of Public Welfare to negotiate all necessary agreements between themselves and with the United States; and declaring an emergency."

Chapter 58 changed the definition of "employee" in Section 1 of Article 695g by adding the language following the semicolon, making the definition read:

"(c) The term 'employee' includes an officer of a county, municipality, or other political subdivision of the State; also the word 'employee' shall include any State Employee or officer who is paid wholly from United States funds and would be a Federal employee except for classification as a State employee by the Federal Government."

Chapter 58 also made two changes in Section 4 of Article 695g: (1) it added a sentence authorizing agreements for coverage of State employees whose salaries are paid wholly from United States funds; (2) it omitted all references to "other political subdivisions." The text of Section 4, except for the sentence which was added, was identical with the text of the original 1951 act.

In view of the fact that Chapter 58 retained "other political subdivisions" in the definition of "employee," the only reasonable explanation for the omissions in Section 4 is that this portion of Chapter 58 was inadvertently copied from the original 1951 act instead of being copied from the 1953 amendment. However, it is not necessary for us to rule on the effect of a mistake in drafting or on the implied authority from other sections of Article 695g to enter into agreements respecting employees of other political subdivisions. In our opinion, the omission of reference to other political subdivisions in Section 4 as amended by Chapter 58 was clearly ineffectual to repeal the existing authority since this change was not expressed in the title of Chapter 58.

Section 35 of Article III of the Texas Constitution requires that the subject of a legislative act be expressed in its title, and further provides that "if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so

much thereof, as shall not be so expressed." The rule applicable to titles of amendatory acts is stated in 39 Texas Jurisprudence, Statutes, § 48, as follows:

"In addition to the statement of a purpose to amend a given law or provision, a title may specify the nature of the amendment, and when it does so the body of the act must conform. A title that specifies the particular field an amendment is to cover or states a purpose to make a certain change in the prior law, and that is not merely descriptive of the matters to which the law relates, limits the amendatory act to the making of the change designated and precludes any additional, contrary or different amendment. Thus a title that expresses a purpose to change a prior law by adding or extending a provision or conferring a right does not warrant an amendment that omits or restricts a provision of the original act or destroys a previously existing right. . . .

"A title expressing a purpose to amend a statute in a certain particular is deceptive and misleading in so far as the body of the act purports to amend the prior law in other particulars. The amendatory act is void to the extent that its provisions go beyond express limitations or the scope of the title."

The title of an amendatory act which undertakes to specify the particular field of amendment must give notice of changes resulting from omissions and deletions in the statute being amended. Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 103, 200 S.W. 521 (1918); Lone Star Gas Co. v. Birdwell, 74 S.W.2d 294 (Tex.Civ.App. 1934); Att'y Gen. Op. S-119 (1953).

The title of Chapter 58 states a purpose to make a certain change in the prior law, namely, to extend coverage to certain State employees. It does not give notice that the amendment omits employees of "other political subdivisions." The effect of the enactment of Chapter 58 was to leave these omitted provisions in force as they existed prior to its enactment. Accordingly, you are advised that the State Department of Public Welfare may legally continue entering into agreements with the governing bodies of "other political subdivisions" of the State respecting Federal old-age and suvivor's insurance for their employees.

## SUMMARY

The title of House Bill No. 89, Chapter 58, Acts of the 53rd Legislature, First Called Session, 1954, does not give notice of the omission of "other political subdivisions" from Section 4 of Article 695g, V.C.S., as amended therein, and the omission is ineffectual to repeal the existing authority of the Texas Department of Public Welfare to enter

into agreements with govening bodies of other political subdivisions respecting Federal old-age and survivor's insurance coverage for their employees. Tex. Const. Art. III, Sec. 35.

APPROVED:                                        Yours very truly,

W. V. Geppert                                    JOHN BEN SHEPPERD
Reviewer                                         Attorney General of Texas

John Atchison
Reviewer                                         By  *Mary K. Wall*

Burnell Waldrep                                      Mary K. Wall
Appellate Assistant                                   Assistant

John Ben Shepperd
Attorney General